IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY SHRINER | |
|     Plaintiff, | |
| v. | No. |
| SPS TECHNOLOGIES, LLC | JURY TRIAL DEMANDED |
|     Defendant. | |

**COMPLAINT**

Plaintiff Jeffrey Shriner files this Complaint against Defendant SPS Technologies, LLC, and in support thereof, avers as follows:

**Jurisdiction and Venue**

1. The jurisdiction of this Court is based upon 28 U. S. C. §1331, in that this Court has original jurisdiction over Counts I, II and III, which are based upon laws of the United States of America, the Americans with Disabilities Act, 42 U.S.C. §12101, as amended by the ADA Amendments Act of 2008 ("ADA"); and the Family and Medical Leave Act, 29 U. S. C. §2601 ("FMLA").

2. Plaintiff requests a trial by jury of the claims raised herein.

3. Venue is appropriate in this Court pursuant to 28 U. S. C. §1392(b) in that Defendant has ongoing business operations in this District and the events giving rise to the claims occurred in this District.

4. The amount in controversy exceeds $150,000.00, exclusive of interest and costs.

5. Plaintiff has complied with the applicable administrative remedies by timely filing a Charge with the Equal Employment Opportunity Commission ("EEOC") on August 5, 2025, Charge no. 530-2025-08650, and simultaneously dual filing a Complaint with the Pennsylvania

Human Relations Commission ("PHRC"), Case no. 202502878.

6. On December 4, 2025, the EEOC issued a Notice of Right to Sue, permitting Plaintiff to file his causes of action under the ADA in this action.

7. Plaintiff intends to amend this Complaint and assert causes of action under the Pennsylvania Human Relations Act, 43 P. S. §955(a), ("PHRA"), upon receipt of applicable authority from the PHRC.

## Parties

8. Jeffrey Shriner ("Shriner") is an adult male who resides at 211 Lincoln Avenue, Conshohocken, PA 19428.

9. SPS Technologies, LLC ("SPS"), is a Delaware limited liability corporation that operates a principal place of business in the Commonwealth of Pennsylvania at 201 South Maple Street, Suite 200, Ambler, PA 19002.

10. At all times relevant hereto, SPS was acting through its agents, servants and employees, who were acting within the scope of their authority, in the course of their employment, and under the direct control of SPS.

## Factual Background

11. Shriner is a 63 year old male.

12. SPS is a supplier of aerospace fasters and fittings for the aerospace industry.

13. On September 11, 2023, Shriner commenced employment with SPS as a Senior Quality Engineer III, earning a salary of $130,000.00, plus employment benefits.

14. Shriner was continuously employed until SPS terminated him on June 27, 2025.

15. Shriner reported to Christopher Center ("Center"), SPS Director of Quality.

16. As of April 1, 2024, Shriner received a merit increase of 3% at which time Center said, "Thank you for your contributions to the business. I am pleased to confirm your merit increase .. ."

17. In 2024, Shriner's total SPS earnings were $143,049.74, plus employment benefits.

## *Shriner's Medical Conditions*

18. Shriner suffers from Atrial Fibrillation ("AFib"), a heart condition that involves an irregular heartbeat which causes the heart to beat faster than usual.

19. Shriner's AFib condition was first detected on September 18, 2018, when Shriner went into cardiac arrest while flying a private aircraft.

20. AFib causes a significantly increased risk of stroke from blood clots forming in the quivering atria and traveling to the brain, and if not treated, can lead to heart failure, dementia, kidney damage, anxiety and depression.

21. As a consequence of the AFib, Shriner can suffer from shortness of breath, fatigue, chest pain, and lightheadedness.

22. Shriner has a pacemaker that has been implanted to address irregular heartbeats.

23. As a consequence of his medical conditions, Shriner takes the following prescription medicines:

    a. Metoprolol succinate XL, an extended-release beta-blocker medication, primarily used to treat high blood pressure, chest pain (angina), and heart failure;
    b. Apixaban (Eloquis), an anticoagulant, that helps to prevent blood clots from forming by blocking Factor Xa;
    c. Cyclobenzaprine, a muscle relaxant, to relieve muscle spasms caused by acute musculoskeletal conditions or injuries;
    d. Pantoprazole, a proton pump inhibitor, to treat erosive esophagitis or heartburn caused by gastroesophageal reflux disease, a condition where the acid in the stomach washes back up into the esophagus.

24. Despite having AFib, Shriner is cleared by the FAA to fly a plane and by PennDOT to drive an automobile because he has a pacemaker.

25. Prior to the year 2025, SPS Director of Quality Center was aware that Shriner suffers from AFib.

26. On November 5, 2024, Shriner hurt his foot and after presenting himself in the emergency department Shriner was diagnosed as suffering from a metatarsal fracture of his left foot, requiring the use of crutches when he returned to work.

27. On many occasions during Shriner's employment with SPS Shriner had to take off from work for doctor's appointments.

28. On the occasions when Shriner had to take off from work for doctor's appointments, as per SPS policy, Shriner informed Dawn Schulz ("Schulz"), Human Resource Director, and Director of Quality Center, as Shriner was going to out of the building during the appointments.

29. Shriner began to receive write-ups for work performance and related issues as he experienced health related issues and the need to take off of work for doctor's appointments.

30. In early 2025, Shriner discussed with Director of Quality Center that in July 2025 he was going to have a Watchman Heart Implant procedure, to address the AFib, in which a small, parachute-shaped device is implanted in the heart in order to reduce stroke risk by permanently closing the left atrial appendage where clots often form, as an alternative to lifelong blood thinners without the bleeding risks of medication.

31. Center instructed Shriner to coordinate with Human Resources to file "disability paperwork" in order to undergo the procedure; Shriner said he did not understand why disability paperwork would be required for a one day outpatient procedure.

32. From March 24, 2025 through March 26, 2025, Shriner was out of work for medical reasons; on April 4, 2025, Shriner's physician provided a doctor's note to advise SPS as to the reason for the Shriner's absence from work.

33. The date for Shriner to have Watchman Heart Implant procedure was ultimately pushed back to the Fall of 2025.

34. On April 18, 2025, Shiner was admitted to Bryn Mawr Hospital when he was experiencing slurred speech and a possible stroke.

### *The June 6, 2025 Incident at Work*

35. Shriner was assigned to work at SPS's Jenkintown, PA facility until February 17, 2025, when a fire caused major damage to the Jenkintown facility.

36. Following the fire, technical personnel such as Quality Engineers, began reporting to SPS's temporary facility at the Ambler Boiler House in Ambler, PA, three days per week, and working remotely two days per week.

37. On Friday, June 6, 2025, Shriner was working at the SPS Ambler facility at approximately 8:00 a.m. when his AFib was triggered; Shriner was found unresponsive at his desk.

38. Approximately five minutes later Shriner became responsive.

39. SPS called paramedics to the SPS Ambler facility to assess and treat Shriner.

40. The paramedics performed an electrocardiogram test on Shriner and it was determined that the results were in the normal range.

41. SPS advised Shriner that he was to go home for the rest of the workday on June 6, 2025 and SPS arranged for an Uber vehicle to transport Shriner from the Ambler facility to Shriner's home.

42. From Monday June 9, 2025, through Thursday, June 11, 2025, Shriner was working remotely from his home with no issues.

43. On June 11, 2025, Human Resource Director Schulz instructed Shriner to speak with SPS Director of Quality Center to "hand off" what he was working on, so that you can go on "disability leave."

44. Shriner told Schulz that he does not agree with going on disability leave and there are a number of alternatives that can be considered at his next scheduled cardiologist appointment on June 27, 2025.

45. Schulz advised Shriner that there was no alternative and he would have to go out on leave from work.

46. Human Resource Director Schulz advised Shriner that he would need to provide paperwork from his physician in order to return to work at SPS.

47. Schulz did not initially provide Shriner with the paperwork to be completed by Shriner's physician.

48. On June 12, 2025, Shriner advised Center that his disability has never prevented him from being able to work and that his physician would support the same at his upcoming cardiology appointment.

49. On June 13, 2025, Human Resource Director Schulz advised Shriner that he was officially on leave, and he would no longer be able to work for SPS until his physician completed the paperwork.

50. On June 13, 2025, Shriner followed up with Schulz and requested the paperwork that she was requiring his physician to complete.

51. As of June 16, 2025 at 11:03 a.m. Schulz had not provided Shriner with the physician paperwork and Shriner reiterated his request for the paperwork.

52. Later in the day on June 16, 2025, for the first time Schulz provided Shriner with a "Medical Certification Form", dated June 10, 2025, to be completed by a health provider, and a current copy of Shriner's job description; Schulz advised Shriner that he had to have the Medical Certification Form completed and returned by June 26, 2025.

53. When Schulz provided the Medical Certification form on June 16, 2025, Schulz advised Shriner:

> We value your health and well-being, it is important to us that you are able to perform the duties of a Quality Engineer (with or without an accommodation) effectively while also managing your medical needs. However, it is also crucial to maintain a productive and safe work environment for all employees; therefore, you are being placed on leave immediately until you can obtain the clearance from your health care provider.

54. The Medical Certification Form, addressed, "Dear Physician", indicates:

> Please note that on June 6, 2025, Jeff was unconscious and unresponsive at work for approximately five (5) minutes; emergency services had to be called. We are concerned for his safety; Please assure the certification addresses whether or not he is cleared to return to work.

55. The Medical Certification Form asks several questions, including:

   a. If Shriner has any impairment that affects his ability to perform his job?
   b. If Shriner can perform the essential functions of his job?
   c. Whether any leave of absence was required?

56. On June 24, 2025, Shriner advised Schultz that he was picking up the Medical Certification Form from his doctor's office tomorrow and he expressed confidentiality concerns.

57. In response to Shriner's confidentiality concerns Schultz stated that she would be providing an e-mail with a transfer tool to upload the Medical Certification Form

58. On the evening of June 26, 2025, Shriner provided Schulz with the Medical Certification Form completed by his primary care physician, Beck V. Soderberg, MD of Devon Family Practice, who answered the questions posed, including:

> a. 7. Can your patient perform the essential functions identified in the enclosed job description? If not, please list the special essential function's impacted, and indicate how his/her impairment affects his/her ability to perform the functions."
> <u>Answer</u>: "Yes."
> b. 9. If you recommend leave of absence as an accommodation, please state the length of leave, and time you recommend the employee's anticipated return to work date. If the leave time is an indefinite length, please so indicate."
> <u>Answer</u>: "No Leave."

59. The completed form indicates that Shiner's condition can cause some sleeplessness, however, he can perform the essential functions of his job, as detailed in the job description and that no leave of absence was required.

60. The Medical Certification Form does not indicate that on June 6, 2025, when Shriner was found unresponsive at his desk, it was due to him "sleeping."

61. On the morning of June 27, 2025, Shriner contacted Schulz in order to confirm her receipt of the completed Medical Certification Form.

62. Upon receipt of the Medical Certification Form, SPS engaged in no further interactive process with Shriner or his physician.

63. On June 27, 2025, at 4:30 p.m., Human Resource Director Schulz told Shriner by telephone that he was terminated effective immediately because Schulz could not make sense of the information submitted by Shriner's physician.

64. SPS did not issue a letter to Shriner advising him as to the reason that he was terminated.

8

65. From June 6, 2025, until Shriner was terminated SPS never provided Shriner with an FMLA Notice or any form of FMLA leave paperwork.

66. SPS later advised the EEOC that the sole reason that Shriner was terminated is because he was "sleeping on the job on June 6, 2025."

67. SPS's decision to terminate Shriner was pretextual and based upon a desire to terminate an employee who was disabled, who was perceived as disabled, whom it regarded as disabled, and whom SPS perceived to continue to have health issues.

68. Shriner has incurred substantial damages because of SPS's conduct, including lost wages and emotional distress.

69. SPS's actions were willful and outrageous in that its motives and conduct as set forth above were malicious, wanton, reckless and oppressive.

## COUNT I

**VIOLATIONS OF AMERICANS WITH DISABILITIES ACT, AS AMENDED BY THE ADA AMENDMENTS ACT OF 2008**
**42 U. S. C. §12101, et. seq**.

**DISABILITY DISCRIMINATION**

70. Paragraphs 1 to 69 are incorporated herein as if set forth in full.

71. Shriner has/had a disability in the form of a physical impairment that substantially limits/limited one or more major life activities as compared to the average person or most people in the general population.

72. As a consequence of his Afib, Shriner is impacted in his ADA major life activities in the form of the major bodily functions of the heart and circulatory function and fatigue or dizziness that can impact sleeping.

73. Shriner's disability impacted his ability to work at certain times.

9

74. Shriner was qualified to perform his job at SPS.

75. Shriner had a record of impairment.

76. SPS also regarded Shriner as disabled.

77. Shriner suffered an adverse employment decision in the form of the termination of his employment.

78. SPS has discriminated against based upon his disability, and SPS's perception that he is disabled.

79. In terminating Shriner, SPS treated Shriner differently than other similarly situated individuals who are, or were not disabled, or whom SPS did not regard as disabled.

WHEREFORE, Plaintiff Jeffrey Shriner requests that this Court enter judgment in his favor and against Defendant SPS Technologies, LLC, and that this Court award Plaintiff all damages available under the Americans with Disabilities Act, as amended, including monetary damages exceeding $150,000.00, compensatory damages, punitive damages, reasonable attorneys' fees, reasonable expert witness fees, interest, costs, and any other relief which the Court deems appropriate.

## COUNT II

**VIOLATIONS OF AMERICANS WITH DISABILITIES ACT, AS AMENDED BY THE ADA AMENDMENTS ACT OF 2008**
**42 U. S. C. §12101, et. seq**.

**DENIAL OF REASONABLE ACCOMMODATION**

80. Paragraphs 1 to 79 are incorporated herein as if set forth in full.

81. SPS had adequate notice of Shriner's disability.

82. SPS placed Shriner on leave from work pending more information from his physician regarding Shriner's ability to work with or without accommodations.

83. SPS advised Shriner that it could not make sense of the information submitted by Shriner's physician.

84. SPS failed to make a good faith to engage in an interactive process and assist Shriner.

85. SPS could have provided Shriner with reasonable accommodations if it believed that he was unable to perform his job duties but for its lack of good faith.

86. SPS engaged in an unlawful employment practices in violation of the ADA.

WHEREFORE, Plaintiff Jeffrey Shriner requests that this Court enter judgment in his favor and against Defendant SPS Technologies, LLC, and that this Court award Plaintiff all damages available under the Americans with Disabilities Act, as amended, including monetary damages exceeding $150,000.00, compensatory damages, punitive damages, reasonable attorneys' fees, reasonable expert witness fees, interest, costs, and any other relief which the Court deems appropriate.

## COUNT III

### VIOLATION OF FAMILY AND MEDICAL LEAVE ACT

### 29 U. S. C. § 2601, et. seq.

87. Paragraphs 1 to 86 are incorporated herein as if set forth in full.

88. Shriner was an eligible employee under the FMLA in that Shriner was continuously employed for more than twelve months and had at least 1,250 hours of service during the past twelve months.

89. At all times during and after Shriner's employment, SPS was/is an Employer subject to the FMLA in that it engages in commerce or in any industry or activity affecting commerce and has employed 50 or more employees within a 75-mile radius of

Jenkintown and Blue Bell, PA for each working day during each of 20 or more calendar workweeks in the calendar years 2024 to present.

90. SPS perceived Shriner as having an FMLA qualifying reason that necessitated a leave from work as of no later than June 13, 2025.

91. SPS advised Shriner that he was on leave from work effective, June 13, 2025.

92. Shriner was entitled to a minimum of twelve workweeks of leave under the FMLA during any rolling twelve-month period.

93. SPS failed to notify Shriner of his FMLA rights.

94. SPS interfered with, restrained and/or denied the exercise of Shriner's FMLA rights.

95. SPS retaliated against Shriner by terminating Shriner for what it perceived as a need for FMLA leave.

96. SPS's actions with respect to Shriner constitute willful violations of the FMLA.

97. Shriner has sustained substantial damages as a result of SPS's actions.

WHEREFORE, Plaintiff Jeffrey Shriner requests that this Court enter judgment in his favor and against Defendant SPS Technologies, LLC, and award Plaintiff monetary damages equal to the amount of wages, employment benefits, other, any actual monetary losses sustained, interest, liquidated damages as defined by the Family and Medical Leave Act, reasonable attorneys' fees, reasonable expert witness fees, interest, costs, and any other relief which the court deems appropriate.

/S/ Andrew S. Abramson, Esq.

------------------------------

Andrew S. Abramson, Esq.
Abramson Employment Law, LLC
790 Penllyn Blue Bell Pike
Suite 205
Blue Bell, PA 19422
telephone: 267-470-4742
email:  asa@aemploylaw.com

Attorney for Plaintiff Jeffrey Shriner

Dated: January 6, 2026